IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**

vs.  CAUSE Nos.: 3:23-CR-118-HTW-ASH
  3:23-CR-122-HTW-ASH

**ANTHONY HEARD** **DEFENDANT**

**ORDER**

**BEFORE THIS COURT** is a motion by Defendant Anthony Heard which asks this Court to suppress all evidence obtained pursuant to a wiretap on a cellular phone alleged to belong to Heard and for an evidentiary "*Franks* hearing" pursuant to *Franks v. Delaware*, 438 U.S. 154, 156 (1978). Evidence from this wiretap contributed to charges against Heard in two multi-defendant, drug-trafficking-conspiracy indictments, *United States v. Powell, et al.*, No. 3:23-cr-118-HTW-ASH ("the *Powell* Case"), ECF No. 340, and *United States v. Smith, et al.*, No. 3:23-cr-122-HTW-ASH ("the *Smith* Case"), ECF No. 4.

Heard, thus, by and through his attorney, filed an identical motion to suppress evidence in each: docketed as ECF No. 425 in the *Powell* Case and ECF No. 191 in the *Smith* Case. The Government opposed. This Court heard argument from Heard and the Government on two occasions, once on the record in the *Powell* Case (at a status conference on January 23, 2025) and once on the record in the *Smith* Case (at a status conference on March 20, 2025). Counsel for the parties explained that the analysis in each case is the same. This Court has reviewed the affidavit which Homeland Security Investigations ("HSI") Special Agent Bradley J. Harris presented to

obtain the wiretap, and which this motion puts at issue (hereinafter "the Harris Affidavit").[1] The parties have confirmed that this Court has heard all the arguments they intend to make and all the evidence they intend to offer, announced that they stand on the papers, and agreed that this motion is ripe for ruling.

## I.  BACKGROUND

In 2018, HSI working with the Mississippi Bureau of Narcotics (and in connection with the Bureau of Alcohol, Tobacco, Firearms and Explosives, the East Mississippi Drug Task Force, and local law enforcement) began a large-scale investigation. The investigatory team targeted drug-trafficking organizations supposedly operating in and around the City of Meridian, Mississippi. Over several years, through court-authorized wiretaps and by other means, agents intercepted and recorded communications in which various individuals purportedly discussed and conducted criminal acts. Agents identified Marcus Powell and Heard as alleged leaders in the drug-trafficking activity.

In June 2019, Special Agent Harris presented to United States District Court Judge Carlton W. Reeves the Harris Affidavit, in connection with an *ex parte* application for a wiretap, targeting a cellular phone allegedly belonging to Heard. Judge Reeves, finding that probable cause supported the application, ordered the wiretap. Agents, then, were able to eavesdrop on and record several conversations in which Heard supposedly made incriminating and threatening statements.

Special Agent Harris later died.

---

[1] The Government, in discovery, produced to Heard the Harris Affidavit. Neither party filed the Harris Affidavit along with its motion papers because it is subject to a protective order entered in this case. The Government supplied copies of the Harris Affidavit (along with the subsequent application for wiretap, Judge Reeves' order approving it, and more, at Bates Nos. USA-HEARD-000461–563) for this Court's *in camera* review, to which Heard had no objection.

As a result of this investigation, in late 2023, the United States Attorney's Office for the Southern District of Mississippi brought charges against Heard, and a Grand Jury indicted Heard, for conspiracy to distribute—and conspiracy to possess with intent to distribute—controlled substances in the *Powell* Case (along with fourteen co-defendants) and the *Smith* Case (along with eight co-defendants).

In the *Powell* Case, Heard also is charged with possessing with intent to distribute a controlled substance. In the *Smith* Case, Heard also is charged with use of a telecommunications facility in furtherance of a drug trafficking crime, using a telephone to make a threat to injure and kill another person by means of an explosive, conspiracy to commit the crime of possession of a firearm by a convicted felon, and possession of a firearm by a convicted felon. Heard is under pretrial detention and is poised to proceed to jury trial on both these indictments over the next few months.

## II.    DISCUSSION

By statute, a law enforcement officer must make an application to a judge for an "order authorizing or approving the interception of a wire, oral, or electronic communication" (said interception also referred to herein as a "wiretap," where appropriate). 18 U.S.C. § 2518(1). The application must be "made in writing upon oath or affirmation." *Id.* The application must include several matters, including "a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued[.]" § 2518(1)(b).

"Upon such application the judge may"—subject to jurisdictional and geographic requirements—authorize a warrant for the wiretap. The judge must determine, based on the facts submitted by the applicant, several items, including that "probable cause" exists "for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter"—which section includes "dealing in narcotic drugs" (§ 2516(1)(e))—

and "probable cause" exists "for belief that particular communications concerning that offense will be obtained through such interception[.]" § 2518(3). Later, an "aggrieved" defendant:

> may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

§ 2518(10)(a). A defendant also may mount a constitutional challenge. *Cf.* § 2518(10)(c).[2]

The Supreme Court has recognized that "the affidavit supporting [an issued] search warrant" is entitled to a "presumption of validity." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The Fourth Amendment of the United States Constitution,[3] however, "requires that a hearing be held at the defendant's request," if the defendant "makes a substantial preliminary showing" that:

> (1) "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit;" and
>
> (2) "the allegedly false statement is necessary to the finding of probable cause."

---

[2] The Government argues that Heard's motion "fails to articulate standing" because "has not acknowledged that he was involved in the intercepted communications that might give rise to the right to make a Fourth Amendment challenge." ECF No. 193 at 2–3. As the Government acknowledges, however, the wiretap Order at issue names [Heard] as a Target Subject," and Heard may be considered an "aggrieved person" under § 2518(10). *Id.* at 3. Because this Court ultimately denies Heard's motion, it will assume for argument that Heard has standing.

[3] U.S. CONST. AMEND. IV:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*Id.* at 155–56. At such an evidentiary hearing, the defendant carries the burden of proving the "perjury or reckless disregard" for the truth that corrupts the affidavit "by a preponderance of the evidence." *Id.* at 156. Should the defendant succeed in that effort, the court sets the false material "to one side." *Id.* If "the affidavit's remaining content is insufficient to establish probable cause," the court must void the search warrant and suppress the "fruits of the search." *Id.*

The Court of Appeals for the Fifth Circuit has applied the *Franks* test to affidavits supporting Section 2518 wiretap applications. *See, e.g.*, *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2002) (with Circuit Judge James L. Dennis, in a concurrence-in-part, noting that the *Franks* test applies to material "omissions," in addition to falsehoods).

Heard identifies a supposed false statement in the Harris Affidavit, which this Court explains below. Heard argues that, without the benefit of this statement—and in consideration of the damage to Special Agent Harris' "credibility" which would attend such falsity—"the remaining portion" of the Harris Affidavit is insufficient "to support a finding of probable cause" (given a few other putative problems with the wiretap application that this Court will address). ECF No. 191 at 4. Heard argues, then, that "any evidence obtained through the wiretap should be suppressed as fruit of the poisonous tree." *Id.*

Heard directs this Court to an early section of the Harris Affidavit, wherein Special Agent Harris introduces his purpose in applying for a wiretap. Special Agent Harris, there, describes his familiarity with the investigation, which undergirded his belief that probable cause exists to believe that Heard "ha[d] committed, and [would] continue to commit" crimes. Harris Affidavit at 4–5 (¶5) (Bates No. USA-HEARD-000464–65). Special Agent Harris notes that he had "personally participated in the investigation of the TARGET SUBJECTS since July 2018, with the identification of … Anthony HEARD, a.k.a. Lil Heard, in April 2018." *Id.* at 4 (¶5).

Heard asserts that this statement—that Special Agent Harris identified Heard in "April 2018"—is "false." ECF No. 191 at 2. In April 2018, Heard contends that he "was in the custody of the Mississippi Department of Corrections[.]" *Id.* Heard argues that he, then, "could not have been a participant in the drug conspiracy" at that time. *Id.* Heard, in support, attaches to his motion a "Discharge Certificate" from the Mississippi Department of Corrections' Director of Records; the certificate states that Heard, after being sentenced "to 7 year(s) in the Mississippi Department of Corrections," was "discharged" from an unidentified facility on January 21, 2019. *Id.*, Ex. 1 (Bates No. USA-HEARD-001446).

This Court does not find this "Discharge Certificate" particularly probative in determining the truth of Special Agent Harris' statement. As the Government points out, the Director of Records listed his signature date as January 2, 2018—over a year prior to the supposed discharge. The record before this Court is insufficient to determine if one or both these dates is errant. Further, even if Heard still was in prison in April 2018, he provides no support for the contention that he "could not have been a participant in the drug conspiracy" at that same time. Certainly, Heard, without any evidence, cannot credibly argue that prisoners cannot and do not unlawfully traffic drugs or obtain contraband cellular phones.

That said, this Court agrees: the "April 2018" statement likely is untrue. The same sentence includes that Special Agent Harris was involved in the investigation only since July 2018—which is after April 2018. Harris Affidavit at 4–5 (¶5) (Bates No. USA-HEARD-000464). In the section entitled "Facts Establishing Probable Cause Related to Target Telephone 4," Special Agent Harris identifies a high-speed chase and drug recovery in July 2018 (linked to Heard's co-defendant, Powell) as what "initiated the current investigation[.]" *Id.* at 29–30 (¶15) (Bates No. USA-HEARD-000490). Special Agent Harris recounts that, later, confidential sources associated a man

nicknamed "Lil Heard" with Powell's drug trafficking. *Id.* at 31. Then, in April 2019, writes Special Agent Harris, agents, who had "familiarize[d] themselves with HEARD's appearance," identified Heard during observational surveillance. *Id.* at 33–34. Taking these elements of the Harris affidavit together, this Court finds that this alleged identification of Heard occurred in April 2019, not April 2018.

The Government agrees with this assessment, arguing that "April 18" was "an obvious typographical error which should have stated 'April 2019[.]'" ECF No. 193 at 8. This Court can so find, according to the Government, because, "throughout the [Harris] Affidavit," Special Agent Harris "describe[s] Defendant Heard's activities in 2019." *Id.* Nonetheless, contends the Government, this apparent "typographical error" is immaterial and does not justify suppression. The Government argues that: "[w]hen read in context with all other facts and information stated in the Affidavit, [the error] does not rise to a level such that it could mislead Judge Reeves in determining probable cause to authorize the wiretap;" and Heard's motion "wholly fails to demonstrate" that Special Agent Harris misstated the facts "intentionally or with reckless disregard for the truth." *Id.* at 8–9 (collecting cases for the proposition that a harmless or minor, typographical error in an affidavit does not necessarily invalidate a warrant), 12 (quoting *United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020)).

Heard conceded at oral argument that a "typographical error" would not necessitate suppression, but countered that, because Harris' true intent is unknown, the Government cannot be sure that the statement was such a scrivener's error. Heard protests that, with Special Agent Harris now deceased, Heard cannot cross-examine Special Agent Harris to explore his scienter.

While it is true that this Court cannot hear live testimony from Special Agent Harris, the Harris Affidavit enjoys "a presumption of validity." *Franks*, 438 U.S. at 171. To "mandate an

evidentiary hearing, [Heard's] attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*  Heard must allege "deliberate falsehood or … reckless disregard for the truth," and must accompany those allegations with "an offer of proof." *Id.*  This Court finds that Heard has not established a "substantial preliminary showing," through such an offer of proof, that Special Agent Harris made the incorrect statement "knowingly and intentionally, or with reckless disregard for the truth." *Id.* at 155.

This Court finds that the overwhelmingly likely possibility is that the "April 2018" statement was simply an accidental, clerical, or typographical error.  The Harris Affidavit makes no effort to conceal the true timeline, wherein the instant investigation "initiated" in July 2018 and Heard was observed and identified during surveillance in April 2019.  The very same sentence which contains the likely incorrect statement *also* contains the fact that Special Harris was not involved in the investigation until July 2018.

Heard also has not demonstrated a "substantial preliminary showing"—and this Court does not find—that this error was material.  The alleged facts and investigatory findings, included to support probable cause, span dozens of paragraphs in the Harris Affidavit.  *See* Harris Affidavit at 29–51 (Bates Nos. USA-HEARD-000489–511).  Indeed, as this Court previously has explained, these paragraphs explore, in greater detail, the initiation in July 2018 of the instant investigation and the April 2019 identification of Heard.

This Court finds the Harris Affidavit would be essentially unchanged even if the "April 2018" error was set aside.  This Court has been presented no reason to believe that an implication that Special Agent Harris had identified Heard in April 2018, as opposed to in April 2019, was what motivated Judge Reeves to find probable cause and grant the application for a wiretap.

Ultimately, in reviewing Judge Reeves' decision with respect to the probable-cause affidavit, this Court's duty is "simply to ensure that [Judge Reeves] had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (cleaned up). This Court finds that Judge Reeves had a substantial basis. In addition to the identification of Heard, the Harris Affidavit describes several factual bases for the wiretap, including:

- that confidential informants reported that Heard acquired drugs from Powell and that Heard was Powell's "right-hand man" in Powell's drug-trafficking organization;

- that phone records showed many texts and calls between the target phone and devices associated with Powell and other alleged co-conspirators;

- that a previously authorized wiretap, on the phone of an alleged co-conspirator (Calvin Nettles), intercepted several conversations with Heard, using the phone targeted in the Harris Affidavit, during which the two, in coded language, allegedly discussed drug transactions (many such conversations are transcribed and explained in the affidavit); and

- that surveilling agents supposedly observed Heard meet with Nettles in accordance with some of these conversations.

Heard has made much of Special Agent Harris' passing, also noting that Nettles, too, died. Heard points out that he cannot cross-examine either individual, and thus cannot explore Special Agent Harris' "interpretation … of any text messages or phone calls" nor "verif[y]" his confidential sources. ECF No. 191 at 3. This Court, though, does not view the passing of these witnesses as an intractable impediment to adversarial testing of probable cause or the Government's trial evidence. Regarding the interpretation of coded language in the texts and calls, a qualified expert in such language could testify as to the meaning of the texts and calls. Regarding the confidential sources, which are discussed in greater detail below, the Harris Affidavit indicates that multiple agents (so, not Special Agent Harris alone) interviewed the informants.

Heard attempts to cast doubt on some of this other factual support from the Harris Affidavit, which he implies compound with the false statement to shatter the probable cause finding. ECF

No. 191 at 2–3. First, Heard remarks that the Harris Affidavit does not warrant that the confidential sources, who linked Heard to the drug-trafficking organization, "have 'personally' observed [Heard] dealing drugs." *Id.* at 2.

Heard, though, does not cite any legal authority requiring that confidential sources need have "'personally' observed" drug-dealing to help support a probable cause affidavit. The law does not so require. The Supreme Court, instead, has called upon courts to use a "totality-of-the-circumstances analysis." *Gates*, 462 U.S. at 238. The Supreme Court has noted that a confidential informant's tip, of course, holds "greater weight" where it is a detailed description of events "observed first-hand" (specifically where there is some doubt as to the informant's motives); however, if an informant "is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip." *Id.* at 233–34.

Law-enforcement officers "are entitled to rely on" hearsay statements from confidential informants, and, when they do, "no legal requirement [exists] that a judicial officer independently evaluate the informant's credibility." *United States v. Turner*, 73 F. Supp. 3d 122, 126 (D.D.C. 2014) (Ketanji Brown Jackson, J.) (citing *Franks*, 438 U.S. at 164–65). The officers need only inform the magistrate or judge "of some of the underlying circumstances supporting the affiant's conclusions and his belief that any [confidential] informant … was 'credible' or his information 'reliable.'" *McCray v. Illinois*, 386 U.S. 300, 311 (1967) (internal quotations omitted).

This Court finds that Special Agent Harris was upfront with Judge Reeves about the strengths and limitations of the confidential informants at issue. He admitted that the agents were unable to "cultivate any confidential sources that could make controlled purchases directly from

HEARD or POWELL." Harris Affidavit at 56 (Bates No. USA-HEARD-000516). While Special Agent Harris found the information from the confidential informants "valuable," he acknowledged they had "limited knowledge." *Id.* at 53 (Bates No. USA-HEARD-000513). He also described factors that could affect the informants' credibility, like their criminal histories and that they were receiving consideration on pending charges and/or monetary gain in return for their assistance.

Special Agent Harris, nonetheless, noted that one of the confidential informants has an "extensive and long-standing relationship with," and has "assisted," agents on prior occasions, leading agents to find the informant "credible and reliable." *Id.* at 23 (Bates No. USA-HEARD-000483). He also explained that he believed the information from the other informant at issue to be "reliable and truthful," in part because it was corroborated. *Id.* at 22 (Bates No. USA-HEARD-000482). Further, as Heard acknowledges, these confidential informants, primarily, were how authorities "learned of [Heard's alleged] involvement" in the criminal activity; that is, they were a jumping off point—after which further investigation ensued. ECF No. 191 at 2.

This Court, ultimately, finds that Judge Reeves was sufficiently informed of the underlying circumstances regarding Special Agent Harris' use of confidential informants, and the limits of their knowledge and usefulness. This Court, then, is unprepared to vitiate Judge Reeve's probable cause finding simply because those informants were not listed as "eyeball witnesses" to Heard's purported drug dealing.

Heard also brings up an event wherein law enforcement surveilled Heard "pursuant to a geolocation warrant" in April 2019—and supposedly observed Heard answer a "dummy call," allowing said law enforcement to tie Heard to the cellular phone upon which the Harris Affidavit sought a wiretap. ECF No. 191 at 2 (citing Bates Nos. USA-HEARD-000493–94). Heard complains that the discovery contains "[n]o geolocation order" or any "video or photographic

evidence captured of the alleged surveilled activity." *Id.* at 3. This dearth of evidence, says Heard, makes cross-examining Special Agent Harris (which he cannot do) "necessary." *Id.* After reviewing this portion of the Harris Affidavit, though, this Court notes that the narrative describes said surveillance being conducted by Mississippi Bureau of Narcotics agents, not a lone-wolf Special Agent Harris. Thus, this Court sees no reason why Heard would be unable to cross-examine those other agents. This Court also sees no reason why Judge Reeves should not have found probable cause simply because no photographic or video evidence was offered in connection with that event in the Harris Affidavit.

Therefore, even if this Court were to set aside the "April 2018" misstatement, this Court does not find that Special Agent Harris' credibility would be negatively affected, nor that the affidavit would become defective in establishing probable cause, nor that Judge Reeves would be left without substantial evidence supporting his grant of a wiretap. The "April 2018" error is not a material falsity under *Franks*. Nor are the other deficiencies Heard identifies material omissions.

### III.    CONCLUSION

This Court holds that Heard has not made a substantial preliminary showing under the *Franks* test to warrant an evidentiary hearing (or demonstrated that this Court should suppress the evidence collected as fruit of the wiretap at issue in this motion). **IT IS THEREFORE ORDERED** that Heard's motions (*United States v. Powell, et al.*, No. 3:23-cr-118-HTW-ASH, ECF No. 425; *United States v. Smith, et al.*, No. 3:23-cr-122, ECF No. 191) are **DENIED**.

SO ORDERED this the   14th   day of          April         , 2025.

/s/ HENRY T. WINGATE
**UNITED STATES DISTRICT COURT JUDGE**